*STATE EX REL. FRANKLIN ALTER v. FREDERICK BADER ET AL, COMMISSIONERS.

1. PETITIONS TO TEST THE CONSTITUTIONALITY OF AN ACT WILL BE DISMISSED, WHEN.

Where a tax levied for a certain improvement was all paid without a single protest from anyone, a taxpayer will not be allowed to come into court at this late date, claiming that the act under which the tax was levied was unconstitutional, and therefore his petition will be dismissed as without equity.

2. ACTION TO TEST THE CONSTITUTIONALITY OF AN ACT, WHEN TO BE BROUGHT.

Where a party wishes to test the constitutionality of a certain act, he should commence his action before the tax provided for by the act was levied and collected, and before those who were compelled or authorized to act under it had acted.

SWING, J.

This case is here on appeal from the court of common pleas. In that court plaintiff filed a petition, to which defendant filed a demurrer, which demurrer was overruled; thereupon defendants filed an answer, to which plaintiff demurred, which demurrer was sustained; thereupon defendants, not desiring to plead further, judgment was returned as prayed for in the petition. Thereupon defendants gave notice of appeal and the case was afterwards brought into this court.

On the hearing in this court the whole case, as made by the petition, answer and demurrers was heard together, and we will dispose of it in that way.

The petition and answer are as follows:

---

*This decision is affirmed in 56 O. S., 718, the Supreme Court holding that action to enjoin on account of unconstitutionality is too late after payment of assessments; and that it is not a misappropriation of the moneys to devote taxes voluntarily paid to the purpose for which they were paid.

See also State ex rel. v. Bader et al 3 S. & C. P. (14), 99.

7 Dec. 1

## PETITION.

For cause of action, plaintiff alleges that he is a taxpayer of the county of Hamilton, state of Ohio; that defendants, Frederick Bader, Henry Korb and John Breen, constitute the board of county commissioners of Hamilton county, Ohio; that defendants, Lloyd Baen, J. R. McGavin and Conrad Klein, assume and claim to be trustees appointed under authority of a pretended act of the general assembly of Ohio, entitled "An act to authorize the commissioners of Hamilton county to levy a tax for improving, grading and macadamizing Indian Hill avenue, in Columbia township, and for other purposes," passed by the general assembly, May 1, 1894.

Plaintiff says that on or about the 15th day of May, 1896, as such taxpayer, he presented to the prosecuting attorney for said county of Hamilton, a written request to apply by civil action, in the name of the state of Ohio, to a court of competent jurisdiction, restraining said defendants from taking further action with a view to improving, grading or macadamizing Indian Hill avenue, in Columbia township, Hamilton county, Ohio, or any other action whatsoever, pursuant to said pretended act of the general assembly of Ohio, for the reason that said pretended act is unconstitutional and invalid, and the exercise of the powers conferred and duties imposed upon said board of county commissioners and trustees by said act would result in the misapplication of the funds of the county, and the entering into of contracts in contravention of the laws of this state.

Plaintiff says that said pretended act is found in volume 91, p. 671, Ohio Laws.

Plaintiff says that defendants have already proceeded to act under said pretended act of the general assembly so far as to appropriate property for the purpose of widening said avenue, and are about to enter into further contracts for said improvement and to carry out the provisions of said pretended act.

Plaintiff says that said pretended act of the general assembly is unconstitutional and invalid, and that unless restrained by this court, defendants will proceed to award and enter into contracts for the making of said improvement, by grading, paving, etc., and will issue bonds of the county to pay for the same, and do all and singular the acts which they are authorized or required to do by the terms of said act, and that to carry out the provisions of said act would result in the misapplication of the funds of the county and the entering into of contracts in contravention of the laws of this state.

Wherefore, plaintiff prays that defendants may be enjoined, until further order of court, from taking any further action as members of said board of county commissioners and trustees respectively, with a view to improving, grading, macadamizing or widening said avenue, and from issuing bonds or levying any taxes, or expending any money with a view to carrying out the provisions of said act, and that upon final hearing said order of injunction may be made perpetual, and for such other proper relief as in equity plaintiff may be entitled to.

## ANSWER.

Now come defendants, Frederick Bader, Henry Korb and John Breen, commissioners of Hamilton county, Ohio, and for answer to the plaintiff's petition say, that they admit that they constitute the board of county commissioners of Hamilton county, Ohio.

They admit that the general assembly of Ohio did on the first day of May, 1894, pass an act entitled "An act to authorize the commissioners of Hamilton county, Ohio, to levy a tax for improving, grading and macadamizing Indian Hill avenue, in Columbia township, and for other purposes;" said act is found in volume 91, p. 679, Laws of Ohio.

Defendants further say, that in accordance with and in pursuance of section 7 of the said act they, as commissioners of said Hamilton county, Ohio, levied and assessed on the grand levy of taxes, on the taxable property of said Hamilton county, a tax of two-tenths (2-10) of a mill on each dollar valuation thereof, one-half of which was assessed and collected on the tax duplicate of the year 1894, and the remainder on the tax duplicate of 1895, for the purpose of creating a fund for carrying out the provisions of the said act.

That there is now to the credit of the said fund, in the treasury of Hamilton county, Ohio, as aforesaid assessed and collected, the amount of $——, which was paid by the taxpayers of said county without objection or protest.

Defendants further say, that in accordance with the provisions of said act, said Hamilton county acquired title by dedication and releases to the right of way through certain lands in said Columbia township, for the purpose of improving said road in accordance with said act aforesaid. And that the compensation to be paid for certain other lands necessary for the right of way of said avenue was ascertained in appropriation proceedings, but was never paid.

Defendants further deny each and every other allegation in plaintiff's petition contained not hereinbefore specifically admitted.

Wherefore defendants pray that the petition of plaintiff may be dismissed, and for their costs herein expended.

The act above mentioned is found at p. 679, vol. 91, O. L. It authorized the commissioners of said county to improve a road to be known as Indian Hill avenue; they were authorized to appoint trustees to obtain rights of way and make surveys, to appropriate property and to levy a tax of 2-10 of a mill on each dollar, one-half to be collected in the year 1894 and the other half in the year 1895.

Under the provisions of this act the tax had been collected, the trustees appointed, surveys made, rights of way procured, and condemnation proceedings terminated, with the exception of paying over the amounts awarded by the jury, and the county had incurred heavy costs, and the commissioners were about to award the contract for the building of said avenue.

Up to the time of the filing of this petition no objection had been made by any taxpayer to the paying of this tax.

What are the rights of a taxpayer in a court of equity under these circumstances?

The sole ground for the relief asked is that the law is unconstitutional.

There is no claim that the commissioners are in any way violating the law itself or not in good faith and correctly carrying out this particular law according to its terms, and, speaking for myself, I very much question whether sections 1777-8 R. S., under which this action is brought, applies to the question here raised.

But without passing on this matter, we come to the consideration of the question above put.

Courts are always reluctant to hold acts of the legislature unconstitutional in whatever form the question is presented, and especially is this true of courts which are not courts of last resort. And it is not in every case, that courts will enter into a consideration of whether a law is constitutional or unconstitutional.

The supreme court of the United States, in the case of *Stuart* v. *Laird* at p. 309, speaking to a constitutional question raised in the case say : "To this objection which is of recent date, it is sufficient to observe that practice and acquiescence under it for a period of several years, commencing with the organization of the judicial system affords an irresistible answer, and has indeed fixed the construction. It is a contemoprary interpretation of the most forcible nature. This practical exposition is too strong and obstinate to be shaken or controlled. Of course the question is at rest and ought not to be disturbed."

Mr. Justice Curtis, in the Dred Scott case, 19 Howard, at page 616, says : "A practical construction, nearly contemporaneous with the adoption of the constitution and continued by repeated instances through a long series of years, may always influence and in doubtful cases should determine the judicial mind on a question of the interpretation of the constitution."

In the case of *Prigg* v. *The Commonwealth*, 16 Peters, at p. 621, the supreme court of the United States say : " Under such circumstances if the question was one of doubtful construction, such long acquiescence in it, such contemporaneous expositions of it and such extensive and uniform recognition of its validity, would in our judgment entitle the question to be considered at rest, unless indeed the interpretation of the constitution is to be delivered over to interminable doubt throughout the whole progress of legislation and of national operations. Congress, the executive and the judiciary, have upon various occasions acted upon this as a sound and reasonable doctrine."

In two cases recently decided by the supreme court of the United States, not yet officially reported, *The United States* v. *The Realty Company* and the *Same* v. *Gay*, known as the sugar bounty cases, in which the constitutionality of the act of congress of March 2, 1895, was sought to be brought in question. That court declined to consider whether the act was constitutional or not, declaring that at that time it would be inequitable to do so, evidently going on the theory that the time to have raised this question was before those affected by it had gone out and acted upon it.

While it may well be said that these cases are not directly in point on the question here presented, still they clearly show the reluctance of our courts to be continually and everlastingly bringing into question the constitutionality of the acts of the legislature. What the people want and need is stability in legislation and confidence in its correctness, and this can never be attained if at any and all times it may be called in question.

Coming now more practically to the position that the plaintiff occupies here. This is a suit in equity and must be governed by equitable principles, an injunction is sought, it is an extraordinary remedy, to be granted only upon the clearest showing of right.

It is true that the plaintiff is here, not as an individual, but in a representative capacity. But it is clear to us that this in no wise changes or betters his standing in a court of justice.

State ex rel. v. Bader et al.

The taxpayer or citizen acting in a representative capacity, stands the same as one in an individual capacity. If he has an equitable action, and has been diligent and alert, comes into court with clean hands, having done equity, he may have a standing; otherwise not.

In the case of *Babcock* v. *The City of Fond Du Lac*, 58 Wis., 230, the first proposition of the syllabus is as follows: "One who voluntarily pays a void tax with knowledge of the facts rendering it void, can not recover back the amount so paid, nor can he maintain an action to restrain the application of the money raised by such tax to the purpose for which the tax was levied."

The court in the opinion say: "This is a bill in equity, and to maintain the action the plaintiff was bound to present affirmatively such a case as would entitle him to equitable relief. The substance of all the allegations of the complaint is that the plaintiff was a resident freeholder and taxpayer in the city and that the contract was void, because it created a debt in excess of the constitutional limitation. The action is not brought to prevent any injury, nor resist any burden, nor to restrain any diverson of any fund from the purpose for which it was raised to a different use. On the contrary the only object of the action seems to have been to prevent the money from being applied to the very purpose for which the tax was levied, the money paid and appropriated. There are no equitable considerations why the court at the instance of the plaintiff should interpose to prevent the doing what the plaintiff and other taxpayers voluntarily put it in the power of the city and its officers to do. The contribution having been voluntarily made to a particular fund for the purpose of having it applied to a particular object, the plaintiff as such contributor cannot now successfully invoke the aid of equity to prevent such application."

In the case of *Kellog* v. *Ely*, 15 O. S., 66, the court say: "We do not find it necessary to determine any one of the many questions made and argued by council in the case as to the legality or illegality of the proceedings by which this ditch was established, because if we take for granted all that the plaintiff below claims in this respect, we are of opinion that he does not make out such a case as to entitle him to a remedy by injunction at the hands of the court of equity. It is not for every threatened violation of the legal rights of a party that a court of equity will intervene with its preventive remedy by injunction even in cases where that remedy would be efficient. A party appealing to a court of equity must make a case which can commend itself to the conscience of the court.

These last two cases bear directly on the matter here in controversy.

No complaint was made as to this law or this tax by any taxpayer; the tax was all paid without a single protest.

Taxes voluntarily paid, under well settled law, cannot be recovered back by the taxpayer and by well settled law, it cannot be expended for purposes other than that for which it was levied. It would therefore have to remain in the treasury at least until some legislative action might be had in regard to it. And at the same time there is no claim made that the money is not to be expended in accordance with the act under which it was collected.

We are unable to see any equity in plaintiff's case. If the act in question was unconstitutional, he should have spoken before the tax was levied and collected and before those who were compelled or authorized to act under it had acted. Then a court of equity would have listened

to him, but now it is too late. And we will not consider whether the law is constitutional or not.

The petition will be dismissed.

*Theo. Horstman,* for Plaintiff.

*Speigel, Foraker & Rendigs,* for the County Commissioners.